UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DURELL JONES                                    CIVIL ACTION

VERSUS                                          NO. 12-2191

JEFFERSON PARISH ET AL.                         MAGISTRATE JUDGE
                                                JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTIONS

In this employment discrimination action, plaintiff, Durrell Jones, alleges that his employer, Jefferson Parish through its Streets Department, discriminated against him and harassed him in a hostile work environment based on his color, which he describes as light-skinned African-American, in violation of Title VII, 42 U.S.C. § 2000e et seq.; retaliated against him for engaging in protected activity, in violation of Title VII and unspecified state whistle-blowing statutes; and committed intentional infliction of emotional distress under Louisiana Civil Code article 2315.

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c), upon the written consent of all parties.  Record Doc. No. 12.

Defendant's motion to dismiss plaintiff's claims against the Jefferson Parish Streets Department, which is a non-juridical entity, and to dismiss plaintiff's race and disability discrimination claims was previously granted.  Those claims were dismissed with prejudice.  Record Doc. No. 15.

Jefferson Parish filed a motion for summary judgment, Record Doc. No. 23, arguing that Jones failed to exhaust his administrative remedies as to those portions of his claims that are beyond the scope of the charge of discrimination and retaliation that he filed with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2011. Defendant argues that the remainder of plaintiff's discrimination, harassment and retaliation claims should be dismissed because Jones cannot establish a prima facie case as to these claims or, alternatively, cannot rebut defendant's legitimate, nondiscriminatory, nonretaliatory reasons for its actions. Jefferson Parish asks the court to decline to exercise supplemental jurisdiction over Jones's state law claim of intentional infliction of emotional distress. Defendant supports its motion with excerpts from plaintiff's deposition transcript and the affidavits of his immediate supervisor, Kenneth Lemieux, and Lemieux's supervisor, Rodney Lyons, both of whom Jones identifies as dark-skinned African-Americans.

Jones filed an opposition memorandum, supported by his entire deposition transcript and numerous exhibits. Record Doc. No. 34. In addition to opposing defendant's summary judgment motion, Jones asks the court to reconsider its prior dismissal of his disability discrimination claim only.[1] The court treats this request as a motion for reconsideration.

---

[1]Plaintiff does not seek reconsideration of the dismissal of his race discrimination claim.

The court continued the submission date of the summary judgment motion so that Jones could depose the assistant director of the Jefferson Parish Streets Department, Donald Hogan.  Jones received leave to file a supplemental opposition memorandum after the deposition was taken, and defendant received leave to file a reply to that memorandum.  Record Doc. No. 36.  Jones filed a timely supplemental memorandum in opposition to defendant's motion, supported by the transcript of Hogan's deposition and the declarations under penalty of perjury of Streets Department employees Sarah Rutley and Jason Montagino.  Record Doc. No. 37.  Jefferson Parish received leave to file an amended statement of uncontested facts because a page was missing from its original filing.  Record Doc. Nos. 42, 44.  Defendant filed a timely memorandum in reply to plaintiff's supplemental opposition memorandum.  Record Doc. No. 43.  Jones received leave to file a reply to defendant's amended statement of uncontested facts.  Record Doc. Nos. 49, 50, 51.  The supplemental opposition memorandum that he filed as Record Doc. No. 51 is a duplicate of his previously filed supplemental opposition memorandum. Record Doc. No. 37.

IT IS ORDERED that plaintiff's motion for reconsideration is DENIED.  Having considered the complaint, as amended, the submissions of the parties, and the applicable law, and for the following reasons, IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED and that plaintiff's remaining claims are DISMISSED WITH PREJUDICE.

I.      PLAINTIFF'S MOTION FOR RECONSIDERATION

Without citing any legal authority, Jones argues that the court should reconsider its dismissal of his disability discrimination claim.  The order dismissing that claim and his race discrimination claim was entered on March 8, 2013.  After that order, plaintiff's claims of color discrimination, retaliation and intentional infliction of emotional distress remained for decision in the case.  No party moved for entry of judgment under Fed. R. Civ. P. 54(b), and no judgment was entered as to plaintiff's disability discrimination claim.

Jones's motion to reconsider does not strictly fall under either Fed. R. Civ. P. 59(e) or 60(b).  These rules apply to motions for relief from a judgment that are filed either within 28 days after entry of judgment, Fed. R. Civ. P. 59(b)), or within a reasonable time but no more than a year after entry of a final judgment, order or proceeding.  Fed. R. Civ. P. 60(c)).  Rule 59(e) does not facially apply to an interlocutory order because the court has not entered a final order or judgment.  Colo. Cas. Ins. Co. v. Brock USA LLC, No. 11-cv-02527-DME-KMT, 2013 WL 4550416, at *1 (D. Colo. Aug. 28, 2013) (citing Fed. R. Civ. P. 54(b); Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008); Wagoner v. Wagoner, 938 F.2d 1120, 1122 n.1 (10th Cir. 1991)); Payne v. Univ. of S. Miss., No. 1:12cv41-KS-MTP, 2013 WL 2445031, at *1 (S.D. Miss. June 5, 2013); Nicholson v. City of Daphne, No. 07-0496-WS-M, 2009 WL 2045152, at *2 (S.D. Ala. July 7, 2009) (citing Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009); Fye, 516

4

F.3d at 1223 n.2; In re Bayshore Ford Truck Sales, Inc., 471 F.3d 1233, 1260-61 (11th Cir. 2006); Santamarina v. Sears, Roebuck & Co., 466 F.3d 570, 571 (7th Cir. 2006); Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2005); Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003); Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1315 (11th Cir. 2000); Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 862 (5th Cir. 1970)); Goldman v. Hartford Life & Accident Ins. Co., No. 03-0759, 2006 WL 861016, at *1-2 (E.D. La. Mar. 30, 2006).

My research has not located any Fifth Circuit opinion regarding whether either Rule 59(e) or 60(b) applies to a requested review of an interlocutory order of partial dismissal. "However, several district courts within the Fifth Circuit have applied the legal standards set forth in Rule 59(e) to motions to reconsider interlocutory orders." Payne, 2013 WL 2445031, at *1 (citing W.C. Bulley v. Fid. Fin. Servs. of Miss., Inc., No. 3:00cv522-BN, 2000 WL 1349184, at *2 (S.D. Miss. Sept. 8, 2000); Goldman, 2006 WL 861016, at *1; Martinez v. Bohls Equip. Co., No. SA-04-CA-0120-XR, 2005 WL 1712214, at *1 (W.D. Tex. July 18, 2005)); see also Koch v. Kentwood Springs, No. 05-291, 2006 WL 2802204, at *1 (E.D. La. June 28, 2006) (citing Zimzores v. Veterans Admin., 778 F.2d 264, 266 (5th Cir. 1985); Bon Air Hotel, 426 F.2d at 862) (interlocutory order denying summary judgment motion "can be modified or rescinded by the Court, as justice requires, at any time before final decree").

The court will use the Rule 59(e) standards, which are less stringent than the Rule 60(b) standards, as guidelines to decide plaintiff's motion. Steward v. City of New Orleans, No. 11-30947, 2013 WL 3964005, at *2 (5th Cir. Aug. 2, 2013). District courts have broad discretion in deciding such motions. Johnson v. Diversicare Afton Oaks, LLC, 597 F.3d 673, 677 (5th Cir. 2010); McGillivray v. Countrywide Home Loans, Inc., 360 F. App'x 533, 537 (5th Cir. 2010) (citing Hale v. Townley, 45 F.3d 914, 921 (5th Cir. 1995)).

The Fifth Circuit

> "has recognized four grounds upon which a Rule 59(e) motion may be granted: (1) to correct manifest errors of law or fact upon which a judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest injustice, or (4) an intervening change in controlling law." The Fifth Circuit Court of Appeals has instructed that the standard for Rule 59(e) "favors denial of motions to alter or amend a judgment."

In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2009 WL 2447846, at *2 (E.D. La. Aug. 6, 2009) (quoting S. Contractors Grp., Inc., v. Dynalectric Co., 2 F.3d 606, 611 (5th Cir. 1993); Johnson v. Cain, No. 05-1943, 2007 WL 1741883, at *1 (E.D. La. June 14, 2007)) (citing Arceneaux v. State Farm Fire & Cas. Co., No. 07-7701, 2008 WL 2067044, at *1 (E.D. La. May 14, 2008)) (emphasis added); accord McGillivray, 360 F. App'x at 537 (citing In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002)). Because Jones does not cite any intervening change in controlling law, the court considers his motion under the other three possible grounds for reconsideration.

Because a Rule 59(e) motion "calls into question the correctness of a judgment," it is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly discovered evidence." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004) (quotation and citations omitted). "The granting of a Rule 59(e) motion 'is an extraordinary remedy and should be used sparingly.'" In re Pequeño, 240 F. App'x 634, 636 (5th Cir. 2007) (quoting Templet, 367 F.3d at 479); accord Ewans v. Wells Fargo Bank, N.A., 389 F. App'x 383, 389-90 (5th Cir. 2010).

"A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." LeClerc v. Webb, 419 F.3d 405, 412 n.13 (5th Cir. 2005) (citation omitted). The Fifth Circuit has routinely "refused to reverse a district court's rejection of a Rule 59(e) motion when the underlying facts were well within the [plaintiff's] knowledge prior to the district court's entry of judgment." In re Rodriguez, 695 F.3d 360, 371 (5th Cir. 2012) (quotation omitted).

In the instant case, Jones merely rehashes the same arguments he made in his opposition to defendant's motion to dismiss. He has not even argued, much less provided any evidence, that the court's dismissal was based on manifest errors of law or fact, that new evidence is now available or that reconsideration is necessary to prevent manifest injustice. I find that none of these situations is present. Accordingly, plaintiff's motion to reconsider is DENIED.

In addition, I note that the reports of a licensed clinical social worker, John J. Muggivan, which Jones submitted with his opposition memorandum, are relevant only to his claim of disability discrimination, which is no longer in this case.  The reports are not relevant to plaintiff's claims of harassment, discrimination and retaliation.  Only relevant evidence is admissible.  Fed. R. Evid. 401, 402.

To the extent, if any, that Jones may be seeking to introduce the reports to prove the truth of his own statements to Muggivan about alleged discrimination, harassment or retaliation, his statements are inadmissible hearsay.  Although Fed. R. Evid. 803(4) provides an exception to the inadmissibility of hearsay statements that are made for the purpose of medical diagnosis and treatment, the rule

> "does not open the door to all statements made to a physician."  "The test, when examining whether statements contained in medical records relating to a patient's condition are admissible hearsay, is whether such statements are of the type pertinent to a physician in providing treatment."  "Details of the injury not necessary for treatment but serving only to suggest fault would not ordinarily qualify as an exception to the hearsay rule under Rule 803(4)."

Hankins v. Ford Motor Co., No. 3:08-CV-639-CWR-FKB, 2011 WL 6888547, at *5 (S.D. Miss. Dec. 29, 2011) (quoting Weissenberger & Duane, Weissenberger's Federal Evidence § 803.19, at 601 (7th ed. 2011); Wilson v. Zapata Off-Shore Co., 939 F.2d 260, 272 (5th Cir. 1991); Rock v. Huffco Gas & Oil Co., 922 F.2d 272, 277-78 (5th Cir. 1991)) (emphasis added); accord Fed. R. Evid. 803(4) Advisory Committee Notes; Brown v. Seaboard Airline R.R., 434 F.2d 1101, 1104 (5th Cir. 1970).

Plaintiff's statements to Muggivan concerning alleged discrimination or retaliation for activity protected by Title VII by Lyons, Lemieux or anyone else, and Muggivan's conclusions regarding such discrimination or retaliation, if any, are inadmissible hearsay. Accordingly, the court has not considered Muggivan's reports.

II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

A.   Standard of Review for Summary Judgment Motions

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the

essential elements of its claim.  Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

 "Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"  Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

 "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation

omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291

(5th Cir. 2009).

      B.    The Undisputed Facts

      The following facts are established by the competent summary judgment evidence

and are accepted as undisputed solely for purposes of the pending motion.

      Jones was promoted to Road Maintenance Superintendent I on the West Bank of

Jefferson Parish in 2005.   Kenneth Lemieux, whose title is Road Maintenance

Superintendent II, was plaintiff's immediate supervisor from at least October 2010

through February 18, 2013.   Lemieux's supervisor is Rodney Lyons, who is a Road

Maintenance Superintendent III.   Jones identifies these men as dark-skinned African-

Americans.   Lemieux also supervised three others with the title of  Superintendent I:

Andrea Williams, whom plaintiff identifies as a dark-skinned African-American; Donald

Boudreaux, a Caucasian; and Daniel Williams, a Caucasian.   Charlie Johnson was a

foreman under Jones's supervision and is identified by plaintiff as an African-American

with a dark complexion.   Lyons reports to the Director of the Streets Department, Randy

Nicholson, who is Caucasian.   Donald Hogan, the Assistant Director, is Caucasian.

      In October 2010, Lyons instituted a new policy requiring superintendents to

submit to him more supporting documentation for all after-hours call-out work.

      On January 7, 2011, Jones met with Lyons, Hogan and Nicholson to investigate

a verbal altercation that occurred between plaintiff and a subordinate employee, Lionel

Florence, on November 18, 2010.  Florence filed a written grievance against Jones, but the date of the grievance does not appear in the record.

Jones wrote a "coaching sheet" on his subordinate, Johnson, on February 18, 2011. Jones testified that Johnson later told plaintiff that Johnson would be waiting for Jones at his car.  After Jones informed Lyons of the incident, Lyons called Johnson into his office to speak with him.  Plaintiff testified that, when he left work that afternoon, Johnson followed him in his vehicle to an offsite parking lot where Johnson threatened to kill plaintiff.  Jones called the police and filed a police report.

Jones reported the incident at work the following morning, and a meeting was held about it.  At the meeting, Johnson denied that the incident happened.  Nicholson stated that nothing could be done because the incident did not occur on work premises.  Jones asked Lyons to sit in on future coaching meetings between plaintiff and Johnson, but Lyons declined.

On April 12, 2011, plaintiff filed Grievance No. 2011-20, alleging that Lyons had not properly followed defendant's "stand-by" procedure and had deprived Jones of stand-by pay.  The stand-by policy states: "If an employee is not at work for the whole day on Thursday, Friday, or Monday before and after scheduled stand-by time at the Pump Station, the employee will NOT get paid for stand-by time.  NO EXCEPTIONS."  Jones stated in his grievance that he was one hour late to work on Friday, April 1, 2011 and he left work 45 minutes early that same day to care for his mother.  Lyons denied him stand-

13

by pay for the week.  Jones alleged that other employees had received stand-by pay when they missed work under similar circumstances and that it was unfair to apply the policy to him when it had not been applied strictly to the other employees.  Record Doc. No. 34-10, at pp. 1-9.   Nothing in the record reflects that Jones complained of color discrimination as the reason for Lyons's decision.

Nicole Thompson, a human resources department representative, investigated the grievance.  In a report dated June 23, 2011, Thompson found that Lyons did <u>not</u> treat Jones unfairly or differently from other employees when Lyons removed Jones from the stand-by schedule.  She found that "[t]here was a misunderstanding in interpretation of how the policy was going to be followed," that the department's stand-by policy had been applied differently before Nicholson's and Hogan's tenure, and that Lyons continued to apply the policy as he had done in the past.  She found that the policy was being applied inconsistently.  She noted that there were instances when Jones and other employees had <u>not</u> been removed from the schedule and had received stand-by pay despite being in violation of the policy.  She recommended that Nicholson revise the existing policy to eliminate "a lot of misunderstandings and conflicts" that had been created in the West Bank Streets Department.  Record Doc. No. 34-10 at pp. 1-9.

On July 15, 2011, Jones met with Lyons, Hogan, Nicholson and human resources representative John Dumas to investigate an incident in which Lemieux and Lyons had observed Jones engaging in aggressive and unprofessional behavior towards his

subordinate, Lionel Savage, on June 2, 2011.  According to the incident documentation, Lemieux and Lyons saw Jones using profanity and warning Savage not to question plaintiff.  The record does not indicate that Jones complained about discrimination based on his color during this investigation.

On July 18, 2011, Thompson issued an amended recommendation regarding plaintiff's Grievance No. 2011-20.  She reviewed evidence that Jones provided regarding his new contention that he had performed his stand-by obligation on the weekend of September 25, 2010, and was denied four hours of stand-by pay because he used sick leave on Monday, September 27, 2010, to undergo an emergency medical procedure. Thompson found that "Jones may have been treated differently by Mr. Lyons on this occasion."  She recommended that Jones receive four hours of stand-by pay for that weekend.  Record Doc. No. 34-10 at pp. 8-9.  The amended recommendation does not mention any allegation of color discrimination.  Jones received the additional pay.

Plaintiff filed an intake questionnaire with the EEOC on August 23, 2011, alleging color discrimination.  However, he did not file a formal charge on that date.

On August 26, 2011 and September 6, 2011, Jones attended two more pre-disciplinary investigative meetings with Hogan, Nicholson, Dumas, Lemieux and Lyons regarding the June 2, 2011 incident and grievance by Savage.

Plaintiff filed Grievance No. 2011-45, alleging that Lyons "unfairly" failed to assign two after-hours call-out jobs to Jones on September 6 and 7, 2011, as required

under the stand-by policy, and that Lyons assigned the jobs to Johnson, who was not a superintendent.  Although the grievance is dated September 15, 2011, Lyons did not receive it until October 10, 2011.  Record Doc. No. 34-10 at pp. 14-15.  Jones stated in the grievance:  "I feel like I am being retaliated against by Rodney Lyons.  He is abusing his authority and use of discretion.  This is constant disparate treatment from upper management.  I also feel like I am being harassed."  Id. at p. 15.  The record does not indicate that Jones complained that Lyons discriminated against him based on his color.

Lyons submitted an employee grievance form on September 21, 2011, concerning plaintiff's insubordination.  Lyons stated that Jones had refused to make minor adjustments on work orders and had threatened him when Lyons asked Jones to make necessary and routine corrections to work order forms.  No allegations of color discrimination are reflected in the documentation of this incident.

Lyons responded in writing to plaintiff's Grievance No. 2011-45 on October 10, 2011, stating that he had met with Jones and Lemieux on September 14, 2011 to discuss plaintiff's concerns about the call-out issue.  Lyons said that Jones failed to submit a written grievance within three days, as required by departmental policy.  Nonetheless, Lyons stated that he believed the grievance "is only a retaliation attempt due [to plaintiff's] subsequent suspension and events associated with his continued process of creating discord in the work place including Sabotage and Disrupting the work of others."  Record Doc. No. 34-10 at p. 16.

On October 13, 2011, Jones filed a formal EEOC complaint, charging defendant with employment discrimination based on color, harassment and retaliation. He filed an identical complaint on October 18, 2011. The formal charge was sent to defendant.

Lyons and Lemieux became aware that the charge had been filed while they were preparing for plaintiff's appeal of disciplinary actions before the Jefferson Parish Personnel Board. Neither man had ever seen the charge and neither one knows what facts Jones alleged in support of the charge. Both men aver that their knowledge of plaintiff's allegations of discrimination and retaliation never influenced their professional judgment or any employment decision they made regarding Jones. Lemieux affidavit, Record Doc. No. 23-4 at ¶¶ 9-10; Lyons affidavit, Record Doc. No. 23-5 at ¶¶ 12-13.

On December 2, 2011, Lyons prepared an employee investigation report concerning an incident between plaintiff and his subordinate, Johnson. The previous day, Jones asked Johnson to write a statement regarding a piece of missing equipment. Johnson refused to do so and argued with Jones about it. Jones wrote a coaching form for insubordination based on Johnson's refusal to write the statement. Johnson became upset and refused to sign the form. Jones told Lyons that Johnson used profane language and entered his office in a "threatening manner." Johnson denied both allegations.

Later that day, Lyons held a meeting with the two men to discuss the incident. Lyons informed Johnson that it was his duty to prepare the statement that Jones had requested. Lyons also cautioned Johnson that he should not use profane language in the

17

work place.  Jones admitted that this was an appropriate response by Lyons.  Plaintiff's deposition, Record Doc. No. 34-2 at p. 56 (pp. 51-52 of transcript).

On December 12, 2011, Greg Alexander of the human resources department began an investigation of plaintiff's Grievance No. 2011-45.  Record Doc. No. 34-10 at pp. 17-20.  Lyons explained to Alexander that he assigned the September 6 and 7, 2011 callout jobs to crew members who were still at work, rather than calling Jones, who was on stand-by duty, back to work when he had already left for the day.  Plaintiff denied to Alexander that he was already gone on September 7, 2011, and stated his belief that "Lyons assigned the job to Mr. Johnson because of personal favoritism."  Id. at p. 19.

In a report dated January 18, 2012, Alexander found that the Streets Department's call-out policy was unclear.  He recommended that the department revise and clarify its policy regarding whether it could use employees who were readily available and avoid an after-hours call-out of stand-by personnel, if a call-out would be more costly to the department.  Alexander recommended that the superintendent on stand-by be notified of any after-hours work as a courtesy and noted that a "simple communication" from Lyons to Jones in this instance would have eliminated confusion and "helped assure Jones that he was not being slighted but that Lyons had made a decision to use an available crew in lieu of a 'call-out.'  Instead, Mr. Jones found out after the fact, leading him to suspect unfair favoritism."  Id. at p. 20.

On January 26, 2012, the Jefferson Parish Personnel Board held an administrative hearing concerning plaintiff's appeal of the grievance that Lyons filed regarding Jones's alleged insubordination on September 21, 2011.  On February 8, 2012, hearing officer Theodore W. Nass entered a judgment pursuant to an agreement of the parties.  Nass continued the hearing without date and ordered Jones to complete three counseling sessions with a qualified healthcare provider.  Nass ordered that "the suspension at issue herein will be reduced from five (5) days to two (2) days" if Jones completed the counseling sessions and was not subject to any further disciplinary action by Jefferson Parish.  Record Doc. No. 34-4 at p. 2.

On February 15, 2012, Lemieux prepared plaintiff's employee performance evaluation.  His overall performance rating was "below expectations."  Jones disagreed with the evaluation and thought it was unfair.

On March 4, 2012, Lyons completed an employee investigation report regarding what he perceived as plaintiff's attempt to record a staff meeting for personal reasons without permission.

On April 2, 2012, Jones attended a pre-disciplinary meeting with Lemieux, Lyons, Dumas and Nicholson concerning an act of insubordination by plaintiff on February 10, 2012, when plaintiff allegedly refused to accept Lyons's instructions regarding the parade duty schedule during the Mardi Gras season.

On May 7, 2012, Lyons met with Jones, Lemieux, Nicholson and Dumas to review plaintiff's performance evaluation.   Following a final review by Nicholson, the performance evaluation was completed on May 17, 2012.  Jones suffered no loss of rank, duties or pay at that time as a result of the evaluation.

The EEOC issued a right-to-sue letter to Jones on June 14, 2012.  Record Doc. No. 34-8.

At a June 20, 2012 staff meeting, Lyons instructed all superintendents to read and sign a document stating that they understood a new policy.  The policy required supervisors to turn in all investigative reports and other documents to Lyons for review and provided that those documents would eventually be given to Nicholson.  Jones protested that the policy was "unfair" and accused Lyons and Lemieux of retaliation and intimidation of employees.  Two days later, Lyons prepared an employee investigation report regarding this incident.

Plaintiff testified that, sometime after this meeting, he had a dispute over a job assignment with two of his subordinates, Johnson and Mike Perrin.  Jones stated that Lyons removed Perrin and Johnson from his job site without his knowledge and conducted a private meeting with them and Nicholson.

Sometime after that meeting, Jones received a copy of an employee investigation report in which Lyons stated that Jones subjected his subordinates to "suggestions of conspiracy and mistrust" and manipulated his employees.  The report also contained a

statement by Nicholson, indicating his doubt as to plaintiff's claims of unfairness, retaliation and intimidation and asking Jones to provide evidence of his claims. Jones alleges that Lyons's actions of conducting the meeting with Nicholson without plaintiff's knowledge and of writing an unfavorable investigation report were retaliation for Jones having questioned the new policy of turning in all documents to Lyons first.

On October 22, 2012, Lemieux prepared an employee performance evaluation that gave Jones an overall rating of "below expectations." Jones disagreed with the evaluation. Following review by Nicholson, the evaluation was completed on January 10, 2013.

On January 29, 2013, Nicholson sent a letter to Jones, notifying him that, effective February 9, 2013, (1) Jones was transferred from the West Bank division to the East Bank division of the Streets Department, (2) he was demoted from Superintendent I to Road Maintenance Foreman and (3) his salary would not be affected by the changes. Nicholson stated that the decision to demote Jones was made under the Streets Department's personnel policy, as a result of plaintiff's "below expectations" ratings on two consecutive evaluations. Jones unsuccessfully appealed the decision.

On August 20, 2013, Jones filed a second EEOC charge against defendant, alleging discrimination based on race, color, disability and retaliation as a result of his transfer and demotion on February 9, 2013.

C.   Plaintiff's Claims of Retaliation and Discrimination Based on Events That Occurred More than 300 Days Before October 13, 2011 and After June 14, 2012 Are Not Properly Before This Court

An employee must exhaust his administrative remedies by filing a timely charge with the EEOC before pursuing a Title VII claim of discrimination or retaliation in federal court.  McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008).  In a "deferral state" such as Louisiana, the charge must be filed within 300 days of the allegedly discriminatory conduct.  Windhauser v. Bd. of Supervisors, 360 F. App'x 562, 566 (5th Cir. 2010) (citing Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998)).

"Failure to exhaust is not a procedural 'gotcha' issue.  It is a mainstay of proper enforcement of Title VII remedies."  McClain, 519 F.3d at 272.  "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."  Id. at 273.

The exhaustion requirements impose limitations on the earliest and latest events on which plaintiff's claims can be based in this court.  Jones filed an intake questionnaire with the EEOC on August 23, 2011.  Unlike a formal charge, an intake questionnaire is neither signed under oath nor transmitted to the employer, and has no legal effect.  Harris v. Honda, 213 F. App'x 258, 261-62 (5th Cir. 2006) (interpreting Texas Commission on Human Rights Act, which "is substantively identical to its federal equivalent, Title VII").

Thus, Jones began to exhaust his administrative remedies on October 13, 2011, when he filed his formal charge.  His claims based on events that occurred more than 300 days before October 13, 2011, i.e., before December 17, 2010, are time-barred by his failure to file a timely charge with the EEOC regarding those events.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); Windhauser, 360 F. App'x at 566; Martin v. Lennox Int'l Inc., 342 F. App'x 15, 18 (5th Cir. 2009); Hartz v. Adm'rs of Tulane Educ. Fund, 275 F. App'x 281, 287 (5th Cir. 2008).  Jones therefore has no claim in the instant action arising from the new policy that Lyons instituted in October 2010 requiring superintendents to submit documentation to him or from the verbal altercation that occurred between plaintiff and Florence on November 18, 2010.

In addition, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.  The scope of the inquiry is not, however, limited to the exact charge brought to the EEOC.  EEOC charges are to be given a liberal construction, especially those authored by unlawyered complainants." McDonald v. S. Diversified Indus., Inc., No. 1:02CV186-D-D, 2003 WL 22244321, at *3 (N.D. Miss. Aug. 5, 2003) (citing Thomas v. Tex. Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000); Young v. City of Houston, 906 F.2d 177, 179 (5th Cir. 1990); Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983)).

23

Jefferson Parish argues that no incidents after Jones filed his EEOC charge on October 13, 2011 could reasonably be expected to grow out of the EEOC investigation. Jones responds that all the incidents of which he complains, including his second "below expectations" performance evaluation on October 22, 2012 and his demotion and transfer on February 9, 2013, are reasonably within the scope of the EEOC investigation of his October 2011 charge. The court finds that all alleged incidents of discrimination, harassment and retaliation that occurred <u>before</u> the EEOC issued its right-to-sue letter on June 14, 2012 could reasonably be expected to grow out of plaintiff's charge, which complained of all three of those types of unlawful conduct.

The court finds that none of defendant's acts <u>after</u> the EEOC issued the right-to-sue letter could be within the scope of the investigation, which terminated as of that date. For purposes of the instant action, Jones failed to exhaust his administrative remedies as to his claims of discrimination and retaliation arising from the June 20, 2012 staff meeting, plaintiff's subsequent dispute over a job assignment with Johnson and Perrin, plaintiff's second negative performance review in October 2012, and his demotion and transfer in February 2013. Claims based on these events are <u>not</u> before the court in this action. (Some of these claims are the subject of another EEOC charge that Jones filed on August 20, 2013.)

Because Jones failed to exhaust his administrative remedies as to claims based on incidents that occurred <u>before</u> December 17, 2010 and <u>after</u> June 14, 2012, defendant is

entitled to summary judgment as a matter of law on all of plaintiff's claims of discrimination and retaliation arising out of those events.

      D.    <u>Retaliation and Whistle-Blowing</u>

      Jones alleges that his supervisors retaliated against him for having complained of harassment and discrimination based on his color and for alleged "whistle-blowing." However, he has never described with any clarity in any submission to this court what he means by whistle-blowing.  He appears to contend that defendant retaliated against him for complaining <u>on any basis</u> about policies and events with which he disagreed.

      Similarly, Jones has never identified any state law that protects his supposed whistle-blowing.  He has presented no legal argument to support a claim of retaliation for whistle-blowing in any of his memoranda in opposition to defendant's motion, which seeks summary judgment on <u>all</u> of his claims.  His failure to brief that argument waives the argument in this court.  <u>Ross v. Baylor College of Med.</u>, No. H-08-3080, 2010 WL 2710397, at *8 n.54 (S.D. Tex. July 7, 2010) (citing <u>Vela v. City of Houston</u>, 276 F.3d 659, 678 (5th Cir. 2001); <u>Hargrave v. Fibreboard Corp.</u>, 710 F.2d 1154, 1164 (5th Cir. 1983)); <u>Smith v. Tex. Dep't of Family & Prot. Servs.</u>, No. SA-08-CA-940-XR, 2009 WL 2998202, at *3 n.2 (W.D. Tex. Sept. 15, 2009); <u>Holloway v. Town of Simmesport</u>, No. CV08-0464-A, 2009 WL 1044554, at *7 (W.D. La. Apr. 17, 2009).  Accordingly, defendant is entitled to summary judgment in its favor as a matter of law on plaintiff's state law whistle-blowing claim.

As to plaintiff's retaliation claims under Title VII, Jefferson Parish argues that he cannot establish a prima facie case as to any incidents that occurred <u>before</u> he filed his EEOC charge on October 13, 2011, because he has no evidence that he engaged in any activity <u>protected by Title VII</u> before that date.   Defendant argues that Jones cannot establish a prima facie case as to any incidents <u>after</u> that date because he has no evidence of a causal link between his protected activity of filing an EEOC charge and any adverse employment action.   Alternatively, Jefferson Parish contends that it has produced legitimate, non-retaliatory reasons for its actions and that Jones cannot produce any evidence that retaliation was actually the "but-for cause" of its actions.

> A plaintiff establishes a prima facie case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action.  If the plaintiff successfully presents a prima facie case, the burden shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse employment action.  If the defendant presents evidence that supports that it acted properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action.

<u>Hernandez v. Yellow Transp., Inc.</u>, 670 F.3d 644, 657 (5th Cir.), <u>cert. denied sub. nom</u> <u>Ketterer v. Yellow Transp., Inc.</u>, 133 S. Ct. 136 (2012) (citations and quotation omitted).

If plaintiff fails to produce evidence that raises a material disputed fact as to any of the elements of a prima facie case, summary judgment must be granted in defendant's favor.  <u>Harvill v. Westward Commc'ns, L.L.C.</u>, 433 F.3d 428, 439 (5th Cir. 2005).

As to the first prong of a prima facie case,

> [a]n employee has engaged in protected activity if he or she has (1) opposed any practice made an unlawful employment practice by the statute, or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing. . . .  An employee's informal complaint to an employer may constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is unlawful and the employee holds a good faith, reasonable belief of the conduct's unlawfulness.  <u>Complaints to employers that do not complain of conduct protected by Title VII do not constitute protected activities under the statute.</u>

<u>Williams v. Racetrac Petroleum, Inc.</u>, No. 09-141-SCR, 2010 WL 2035728, at *2-3 (M.D. La. May 20, 2010) (citing <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 58 (2006); <u>Grimes v. Tex. Dep't of Mental Health</u>, 102 F.3d 137, 140 (5th Cir. 1996); <u>Cavazos v. Springer</u>, No. B-06-058, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 1, 2008)) (quotation omitted) (emphasis added).

The court finds that Jones never complained of harassment or discrimination <u>based on his color</u> before October 13, 2011.  His grievances alleged unfair treatment compared to other employees, but there is no record evidence, including his own testimony, that he ever claimed that the unfair treatment was based on his color.  As a matter of law, complaints about an employer's conduct that do not complain of unlawful discrimination are not protected activity.  Therefore, Jones cannot establish the first prong of a prima facie case of retaliation as to any incidents that occurred <u>before</u> October 13, 2011.

Jones also fails to establish the second prong of a prima facie case as to allegedly retaliatory actions that occurred <u>after</u> he filed his EEOC complaint and before the EEOC

27

issued a right-to-sue letter on June 14, 2012, including Lyons's employee investigation report concerning an incident between Jones and Johnson in December 2011; plaintiff's first "below expectations" performance review on February 15, 2012; Lyons's employee investigation report on March 4, 2012, regarding what he perceived as plaintiff's attempt to record a staff meeting for personal reasons without permission; and the disciplinary write-up and meeting concerning an act of insubordination by Jones on February 10, 2012, when he allegedly refused to accept Lyons's instructions regarding the parade duty schedule.  None of these were materially adverse employment actions, as defined by the United States Supreme Court.

A plaintiff who alleges unlawful retaliation is not required to show that he suffered an "ultimate employment decision" of the same kind that must be established for his discrimination claims.  Mitchell v. Snow, 326 F. App'x 852, 854-55 (5th Cir. 2009) (citing White, 548 U.S. at 67).  Rather, "Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Thompson v. N. Am. Stainless, LP, 131 S. Ct. 863, 868 (2011) (quoting White, 548 U.S. at 68).  The Supreme Court characterizes such actions as "materially adverse."  White, 548 U.S. at 68.  "We speak of material adversity because we believe it is important to separate significant from trivial harms.  Title VII, we have said, does not set forth a general civility code for the American workplace."  Id.

28

(quotation omitted).  Material adversity is determined objectively, based on the reactions of a reasonable employee.  Id. at 69-70.

As a matter of law, none of the allegedly retaliatory actions that occurred before June 14, 2012 are materially adverse actions that might dissuade a reasonable worker from complaining of discrimination.  Jones filed a formal charge with the EEOC on October 13, 2011, so he was not actually dissuaded from complaining about discrimination.  He suffered no loss of pay, rank or duties after the first negative performance review or because of any other incident during the relevant time period.

"The allegedly retaliatory incidents of which [Jones] complains are either unsupported by the record or so 'trivial' that they do not appear to be the sort of actions that would dissuade a reasonable employee from reporting discrimination. . . . '[N]ormally petty slights, minor annoyances, and simple lack of good manners will not' 'deter victims of discrimination from complaining to the EEOC, the courts, and their employers.'" Grice v. FMC Techs., Inc., 216 F. App'x 401, 407 (5th Cir. 2007) (quoting White, 548 U.S. at 68); accord Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc., No. 12-31282, 2013 WL 3437774, at *3 (5th Cir. July 9, 2013); see also Magiera v. City of Dallas, 389 F. App'x 433, 437-38 (5th Cir. 2010) (Female police officer asserted that she suffered retaliation when her supervisors sent her home from work after she requested a control number to file a complaint of sexual harassment with Internal Affairs, other officers "clicked" her on the radio and refused to partner with her, and Internal

Affairs investigated complaints lodged against her with heightened scrutiny.  None of these actions was materially adverse, as a matter of law.); Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 331-32 (5th Cir. 2009) (quoting White, 548 U.S. at 68) (Plaintiff alleged that, after she returned from paid leave pending investigation of her sexual harassment complaint, personal items were taken from her desk, the locks on her office had been changed, she was not allowed to close her office door, and she was chastised by superiors and ostracized by co-workers.  "As a matter of law, these allegations do not rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct. . . .  These actions would not dissuade a reasonable employee from making a charge of discrimination."); King v. Louisiana, 294 F. App'x 77, 85 (5th Cir. 2008) (citations omitted) (allegations of rudeness and unfriendliness by supervisor and co-worker, "unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation"); Earle v. Aramark Corp., 247 F. App'x 519, 524 (5th Cir. 2007) ("disciplinary write-ups" and "micro-managing" are not "materially adverse employment actions"); Grice, 216 F. App'x at 407 (unjustified reprimands are "trivial" and not materially adverse); DeHart v. Baker Hughes Oilfield Operations, Inc., 214 F. App'x 437, 442 (5th Cir. 2007) (written disciplinary warning for insubordination and being argumentative would not dissuade a reasonable worker from making or

supporting a charge of discrimination when "there were colorable grounds for the warning and a reasonable employee would have understood a warning under these circumstances was not necessarily indicative of a retaliatory mind-set"). Jones therefore fails to carry his burden to establish the second prong of a prima facie case of retaliation.

Further, even if he engaged in protected activity before he filed his EEOC charge or he experienced some materially adverse employment actions, Jones has produced <u>no evidence</u> of a causal link between his protected activity and the allegedly retaliatory actions to satisfy the third prong of a prima facie case. His causation evidence consists solely of speculation, opinions and conclusory allegations, unsupported by any factual evidence, that defendant's actions were retaliatory. Jones "has not attempted to establish any causal link between the allegedly retaliatory actions and his participation in a protected activity. His subjective belief that the incidents were retaliatory, without more, is not sufficient to survive summary judgment." <u>Grice</u>, 216 F. App'x at 407 (citing <u>Haley v. Alliance Compressor LLC</u>, 391 F.3d 644, 651 (5th Cir. 2004); <u>Travis v. Bd. of Regents</u>, 122 F.3d 259, 266 (5th Cir. 1997)).

Because Jones has failed to meet his burden to produce <u>evidence</u>, as opposed to speculation and conclusory allegations, sufficient to establish that material facts are in dispute as to the first, second and third prongs of a prima facie case, defendant is entitled to summary judgment in its favor as a matter of law on his retaliation claims.

31

E.      Hostile Work Environment

Although the principals involved in this case all identify themselves as African-American, Jones alleges that his darker-skinned supervisors, Lemieux and Lyons, subjected him to a hostile work environment based on his lighter-skinned color.  He also alleges that Lemieux and Lyons allowed plaintiff's subordinates to "disrespect" him and did not support plaintiff in the face of such disrespect because of his skin color.  He claims that he complained about the harassment, but that his superiors failed to take any remedial action.

To establish a prima facie case of a hostile work environment under Title VII, Jones must provide competent summary judgment evidence that

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on [a prohibited ground]; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.
To satisfy the fourth part of that test, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

Mitchell, 326 F. App'x at 856-57 (quoting Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002)) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

When "'the harassment is allegedly committed by a supervisor with immediate or successively higher authority, the plaintiff employee needs to satisfy only the first four

32

of the elements listed above.'"  <u>Parker v. La. Dep't of Special Educ.</u>, 323 F. App'x 321,

325 (5th Cir. 2009) (quoting <u>Celestine v. Petroleos de Venezuella SA</u>, 266 F.3d 343, 353

(5th Cir. 2001)).  If plaintiff does so, defendant will have the opportunity to prove its

affirmative <u>Ellerth/Faragher</u> defense.

If plaintiff fails to produce evidence that raises a material disputed fact as to any

of the elements of a prima facie case, summary judgment must be granted in defendant's

favor.  <u>Harvill</u>, 433 F.3d at 439.

Defendant argues, and the court finds, that plaintiff has not produced <u>competent</u>

<u>evidence</u> sufficient to establish a genuine issue of disputed fact concerning the third and

fourth prongs of a prima facie case of harassment based on color.  The incidents of which

Jones complains during the relevant time period from December 17, 2010 to June 14,

2012, were not sufficiently severe or pervasive, singly or in combination, to alter the

conditions of his employment and create an abusive working environment.  In addition,

Jones offers only speculation, factually unsupported opinions and conclusory allegations

that any action taken by Lemieux, Lyons, Nicholson or any subordinate employee was

based on plaintiff's color.

As to the fourth prong of a prima facie case, the Fifth Circuit has held that

> [a] workplace environment is hostile when it is <u>permeated</u> with
> discriminatory intimidation, ridicule, and insult, that is <u>sufficiently severe</u>
> <u>or pervasive</u> to alter the conditions of the victim's employment.  However,
> <u>not</u> all harassment, including simple teasing, offhand comments, and
> <u>isolated incidents (unless extremely serious)</u>, will affect a term, condition,

or privilege of employment.  To be actionable, the working environment must be objectively hostile or abusive.  Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.

Alaniz v. Zamora-Quezada, 591 F.3d 761, 771 (5th Cir. 2009) (quotations and citations omitted) (emphasis added).

In the instant case, Jefferson Parish has offered reasonable explanations, unrebutted by competent contrary evidence, for all of the events that plaintiff complains were harassing.  When Jones filed two formal grievances, they were addressed.  In both instances, his lost stand-by pay was restored after a human resources investigation revealed that the policy in question was unclear or applied inconsistently, though not based on skin color.  Lyons met with Johnson each time that Jones complained about Johnson's actions on February 18, 2011 and December 2, 2011.  When Jones complained that Johnson followed him and threatened him outside the workplace on February 18, 2011, Johnson denied that the incident took place.  Nicholson stated that nothing could be done because the alleged incident did not occur on the work premises.  Given that he was faced with a credibility contest and no independent witnesses to corroborate either man's story, Nicholson's response does not appear unreasonable.  On the second occasion, when Jones complained of Johnson's insubordination in the workplace, Lyons directed Johnson to follow plaintiff's instructions and not to use profanity.  Jones

34

testified that Lyons's response was appropriate.  None of these events, singly or in combination, amounted to harassing conduct so severe or pervasive as to alter the conditions of plaintiff's employment, and they do not rise to the level of an actionable hostile work environment.

During the same time period, plaintiff's supervisors documented incidents of Jones's own improper behavior.  On June 2, 2011, Lemieux and Lyons observed Jones engaging in aggressive and unprofessional behavior towards his subordinate, Savage. Lyons filed an employee grievance form on September 21, 2011, concerning plaintiff's refusal to make requested adjustments on work orders and his verbal threats towards Lyons.  On February 10, 2012, Lyons wrote Jones up for refusing to accept Lyons's instructions regarding the parade duty schedule.  On February 15, 2012, plaintiff's employee performance evaluation reflected an overall rating of "below expectations." On March 4, 2012, Lyons completed an employee investigation report regarding plaintiff's attempt to record a staff meeting for personal reasons without permission. Jones alleges vaguely that these actions were "unfair."

However, Jones has offered only speculation, factually unsupported opinions (his own and those of other witnesses) and conclusory allegations that any of these actions were taken because of his color.  It is undisputed that no witness ever observed Lemieux, Lyons or Nicholson make any negative comments about Jones based on his color.

Jones offers the sworn statement of Michael Perrin, who was an acting foreman under plaintiff.  Sworn statement of Perrin, Record Doc. No. 34-3 at p. 17 (p. 9 of transcript).  Perrin's testimony does not create any material fact issues in dispute.  First of all, he provides no date for any of the incidents he describes.  Second, Perrin testified that Daniel Williams, a Caucasian, who was a Superintendent I like Jones, had "a lot of problems" with Lemieux and Lyons, looked like "[he] was losing his mind" after some meetings with those two men, and eventually resigned.  Id. at pp. 13-15 (pp. 7-8 of transcript).  This vague testimony in no way supports an inference that Williams and Jones were both treated badly by the same actors based on their skin color.

Perrin said he believed that Lyons and Lemieux treated Jones "unfairly" because Perrin heard them "holler and scream at" Jones when they were inside a conference room and he was outside.  Perrin has no personal knowledge of what went on inside the conference room or the reasons for the raised voices.  Perrin testified further that Lyons and Lemieux "usually exhibited some sort of dislike or hatred toward" Jones and appeared to favor Johnson whenever problems arose between Johnson and Jones.  Id. at pp. 21-23 (pp. 11-12 of transcript).  Perrin gave no reason for what he perceived as dislike of Jones or favoritism toward Johnson.  Perrin responded "Could be" to questions whether he ever witnessed anything to suggest or whether he believed that Lyons and/or Lemieux had a bias toward people who are not dark-complexioned African-Americans. Id. at pp. 21 (p. 11 of transcript), 23-25 (pp. 12-13 of transcript).  This testimony is

36

equivocal, speculative on its face and unsupported by any specific facts from which a reasonable factfinder could infer bias based on color.

Finally, Perrin testified that, from his perspective, he thought Jones did a good job and that it appeared that Nicholson let Lemieux and Lyons "pretty much run the show" and Lemieux and Lyons "are really in charge." Id. at pp. 21 (p. 11 of transcript), 29-31 (pp. 15-16 of transcript). This evidence from plaintiff's subordinate raises no material fact questions regarding the grievances and investigations filed against Jones by his superiors or his other subordinates, or regarding Lemieux's basis for giving Jones a negative performance review. Perrin was not involved in and has no personal knowledge about those decisions. He has no personal knowledge whether Jones was justified in questioning or disobeying orders or policies promulgated by plaintiff's superiors or whether Jones adequately fulfilled all of his job responsibilities. The evidence that Nicholson allowed Lyons and Lemieux to run the West Bank division and handle issues that arose with their subordinates, which is supported by Assistant Director Hogan's deposition testimony, Record Doc. No. 37-1 at pp. 21-23 (pp. 11-12 of transcript), is consistent with the chain of command and creates no inference of discriminatory bias.

To support his claims of color-based animus, Jones proffers the declarations under penalty of perjury of Rutley, a typist at the Streets Department, and Montagino, an apparently non-supervisory employee of defendant. Rutley and Montagino both state that they heard Lyons say in August 2008 that he would make the Maintenance Section

37

a "Chocolate City."  Record Doc. No. 37-2 at pp. 1 & 2.  Jones also cites Hogan's testimony that Rutley told him that Lyons made that comment.  Record Doc. No. 37-1 at pp. 27-33 (pp. 14-17 of Hogan deposition transcript).  Plaintiff asserts that Lyons's comment is direct evidence of discriminatory animus.

Assuming without deciding, solely for purposes of the pending summary judgment motion, that Lyons made the "Chocolate City"  comment, Hogan's <u>testimony about what Rutley said</u> that Lyons said is inadmissible hearsay.  Fed. R. Evid. 801(c).  Inadmissible hearsay cannot create a genuine issue of disputed material fact.  <u>Yancy v. U.S. Airways, Inc.</u>, 469 F. App'x 339, 342 n.1 (5th Cir. 2012) (citing <u>Garcia v. Reeves Cnty.</u>, 32 F.3d 200, 204 (5th Cir. 1994)).

Lyons's remark is not itself hearsay because it is the statement of an opposing party's supervisory employee offered against that party.  Fed. R. Evid. 801(d)(2).  Thus, Rutley's and Montagino's declarations that they heard Lyons make the comment are admissible.  However, evidence of a single, isolated remark made in an unknown context in <u>August 2008</u>, outside of plaintiff's presence and unrelated to his employment, is irrelevant to his claims of color discrimination and harassment more than two years later in December 2010 through June 14, 2012.  The Fifth "[C]ircuit's stray remarks doctrine" provides that offhand comments like this, standing alone, neither establish discriminatory intent nor amount to discriminatory changes in the terms and conditions of employment, and are insufficient to establish a genuine issue of material fact.  <u>Jackson v. Cal-Western</u>

Packaging Corp., 602 F.3d 374, 380 & n.27 (5th Cir. 2010) (discrimination); Forbes v. Catalyst Tech. Inc., 31 F. App'x 836, 2002 WL 243338, at *1 (5th Cir. Jan. 23, 2002) (harassment); Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)) (same).  Rather than being direct evidence of discriminatory animus, Lyons's remark has no probative value as to plaintiff's claims of discrimination and harassment based on his color.

The rest of Hogan's testimony also fails to raise any disputed material fact issues. He testified that Nicholson removed him from a meeting that was being held on an unspecified date concerning either disciplining Jones or plaintiff's performance evaluation, and that Hogan was never again asked to participate in similar meetings. Hogan explained that, during the meeting, he tried to clarify what he thought Jones was saying "because what [Jones] was saying wasn't making sense, so I tried to word it [in] a way that made sense to me and to everyone else in the room and then ask him is this what you were saying." Id. at p. 25 (p. 13 of transcript).  Hogan testified that Nicholson became upset with him for trying to answer for Jones.  Nicholson told Hogan that he would be kicked out of the room if he did it again.  "And I did it again and I was kicked out of the room." Id. at pp. 25-27 (pp. 13-14 of transcript).  Hogan stated that the Director decides who should participate in a grievance or disciplinary matter and the Director has final say on all disciplinary matters. Id. at p. 35 (p. 18 of transcript).

Nothing in this testimony supports plaintiff's allegation that Nicholson was harassing him based on his color by excluding Hogan from this or future disciplinary meetings.

Plaintiff's evidence of bias, therefore, consists solely of the darker complexions of Lemieux, Lyons, Johnson and Andrea Williams and of his own testimony that these persons were members of a "clique" that did not include him.  Plaintiff's deposition, Record Doc. No. 34-2 at pp. 59-62 (pp. 54-57 of deposition transcript).  These facts raise no reasonable inference that any of the complained-of actions were <u>based on</u> plaintiff's skin color.  "Bare allegations of racial discrimination are insufficient to create a genuine dispute as to a material fact." <u>Delphin v. Grayson Cnty.</u>, 484 F. App'x 958, 962 (5th Cir. 2012) (citing <u>Swanson v. Gen. Serv. Admin.</u>, 110 F.3d 1180, 1186 (5th Cir. 1997)).

Although Jones testified to his subjective belief that Lyons and Lemieux harassed him because of his lighter skin color, "Fifth Circuit precedent makes it clear that subjective belief of racial motivation cannot import racial animus into an individual's conduct, and, <u>without objective evidence</u>, is insufficient to create a prima facie claim for a hostile work environment under Title VII." <u>Montgomery v. Sears Roebuck & Co.</u>, 720 F. Supp. 2d 738, 745-46 (W.D. La. 2010) (citing <u>Lyles v. Tex. Alcohol Beverage Comm'n</u>, No. 09-20714, 379 F. App'x 380, 384-85, 2010 WL 2103006, at *4 (5th Cir. May 24, 2010); <u>Cavalier v. Clearlake Rehab. Hosp., Inc.</u>, 306 F. App'x 104, 107 (5th Cir. 2009); <u>Johnson v. TCB Constr. Co., Inc.</u>, 334 F. App'x 666, 671 (5th Cir. 2009); <u>Garza v. Laredo Indep. Sch. Dist.</u>, 309 F. App'x 806, 809 (5th Cir. 2009); <u>Baker v. FedEx</u>

Ground Package Sys., Inc., 278 F. App'x 322, 329 (5th Cir. 2008); Watkins v. Tex. Dep't of Crim. Justice, 269 F. App'x 457, 464 (5th Cir. 2008); Ellis v. Principi, 246 F. App'x 867, 871 (5th Cir. 2007); Harris-Childs v. Medco Health Solutions, Inc., 169 F. App'x 913, 917 (5th Cir. 2006)) (emphasis added).

Thus, as to all of the allegedly harassing incidents, plaintiff's

> evidence is insufficient to establish a prima facie case [of hostile work environment]. . . .   [T]here is nothing in the record, aside from [his] personal claims, that [he] was harassed at all.  Even assuming that [he] was harassed, [he] offers only [his] own subjective belief that it was on a prohibited ground.
>       Not even [plaintiff himself] explained why [he] felt that [his color] was the cause of the mistreatment [he] alleges.   A fortiori there is no evidence that the harassment was severe or was ignored by [his] supervisors . . . . [C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in opposing summary judgment.

Mitchell, 326 F. App'x at 857 (quotation and citation omitted).

Accordingly, Jefferson Parish is entitled to summary judgment in its favor as a matter of law on plaintiff's hostile environment claim.

F.      Discrimination Based on Color

Jones claims that Lyons and Lemieux discriminated against him because of his lighter skin color.  Title VII "forbids discrimination on the basis of 'color' as well as on the basis of 'race.'  Light-skinned blacks sometimes discriminate against dark-skinned blacks, and vice versa, and either form of discrimination is literally color discrimination." Williams v. Wendler, 530 F.3d 584, 587 (7th Cir. 2008) (citing Walker v. Sec'y of the

Treasury, 713 F. Supp. 403, 405-08 (N.D. Ga. 1989), aff'd, 953 F.2d 650 (11th Cir. 1992); Rodriguez v. Gattuso, 795 F. Supp. 860, 865 (N.D. Ill. 1992)); accord Nettle v. Cent. Okla. Am. Indian Health Council, Inc., 334 F. App'x 914, 926 (10th Cir. 2009) (citing Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007)); Rougeau v. La. Dep't of Soc. Servs., No. 04-432-JJB-DLD, 2008 WL 818961, at *8 (M.D. La. Mar. 25, 2008) (citing Walker, 713 F .Supp. at 403).

    As with any discrimination claim, Jones bears the burden to establish a prima facie case of color discrimination.

> [Plaintiff] can establish a prima facie case for discrimination if he can show "that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably."  If a prima facie case for discrimination can be established, then the burden shifts to the [defendant] to rebut [plaintiff's] case by articulating a legitimate, nondiscriminatory reason for his termination. If the [defendant] present[s] such a reason, then the burden shifts back to [plaintiff] to show that the [defendant's] reasons for terminating his employment are not true, but are mere pretexts for discrimination, or that the reasons are true, but his [protected characteristic] was a motivating factor.

Jackson v. Dallas Cnty. Juvenile Dep't, 288 F. App'x 909, 911 (5th Cir. 2008) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 804-05 (1973)) (quoting Bryan v. McKinsey & Co., 375 F.3d 358, 360 (5th Cir. 2004)) (emphasis added).

    Jefferson Parish argues, and the court finds, that Jones cannot establish the third prong of a prima facie case of color discrimination.  The Fifth Circuit has held repeatedly

that the term "adverse employment action" for purposes of discrimination claims includes "'<u>only</u> ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating,'" <u>Bouvier v. Northrup Grumman Ship Sys., Inc.</u>, 350 F. App'x 917, 922 (5th Cir. 2009) (quoting <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 559 (5th Cir. 2007)) (emphasis added), <u>or</u> actions that "'would tend to result in a change of [plaintiff's] employment status, benefits or responsibilities.'" <u>Martin v. Lennox Int'l Inc.</u>, 342 F. App'x 15, 18 (5th Cir. 2009) (quoting <u>Shackelford v. Deloitte & Touche, LLP</u>, 190 F.3d 398, 407 (5th Cir. 1999)); <u>accord</u> <u>Anthony v. Donahoe</u>, 460 F. App'x 399, 403 (5th Cir. 2012). When the summary judgment evidence contains no objective showing of a loss in compensation, duties or benefits, the evidence is insufficient to establish an adverse employment action. <u>Id.</u> (citing <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 282 (5th Cir. 2004); <u>Serna v. City of San Antonio</u>, 244 F.3d 479, 485 (5th Cir. 2001)). This standard concerning the adverse employment action prong of a prima facie case of discrimination has <u>not</u> been altered by the decision of the United States Supreme Court in <u>White</u>, 548 U.S. at 68, which confined the new standard for an "adverse employment action" announced in that case to retaliation claims. <u>Mitchell</u>, 326 F. App'x at 854-55 (citing <u>White</u>, 548 U.S. at 67).

None of the actions that Jones alleges are discriminatory, which occurred within the relevant time period of October 13, 2011 (when plaintiff filed his EEOC complaint) through June 14, 2012 (when the EEOC issued its right-to-sue letter), resulted in any loss

in compensation, duties, benefits or rank.   These actions consist of Johnson's confrontations with Jones twice at work and once offsite; Nicholson's refusal to discipline Johnson about the offsite incident; two instances of initially denied, but ultimately restored, stand-by pay; Lyons's failure to assign two call-out jobs to Jones; discipline after Lemieux and Lyons observed Jones engaging in aggressive and unprofessional behavior towards Savage; two complaints of insubordination when Jones (1) refused to make minor adjustments on work orders and made verbal threats towards Lyons, and (2) refused to accept Lyons's instructions regarding the parade duty schedule; and the February 15, 2012 "below expectations" performance review.

As a matter of law, these are not adverse employment actions.  Thus, Jones cannot establish a prima facie case of discrimination based on any of them.  See King, 294 F. App'x at 85-86 ("[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions"); Ellis, 246 F. App'x at 870-71 (citing Washington v. Veneman, 109 F. App'x 685, 689 (5th Cir. 2004)) (A supervisor's decisions to give plaintiff less favorable work assignments, deny her a performance award and require her to use leave time to compensate for her tardiness are not adverse employment actions.  Decisions "to enforce the employer's protocol" regarding such issues "can hardly be considered an ultimate employment decision."); Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000) (criticism, oral threats, abusive remarks and threats of termination not adverse

employment actions); <u>Burgess v. Cleco Corp.</u>, No. 11-1704, 2013 WL 673481, at *6 (W.D. La. Feb. 22, 2013), <u>aff'd</u>, No. 13-3023,3 2013 WL 4517281 (5th Cir. Aug. 27, 2013) ("While [plaintiff] may have found [defendant's] conduct offensive, verbal reprimands and unfair treatment do not constitute actionable adverse employment actions for claims of discrimination."); <u>Montgomery</u>, 720 F. Supp. 2d at 744-45 (no adverse employment action when plaintiff was offered a demotion at the same pay rate, which she refused; remained in her job without any pay reduction; and received written disciplinary notices); <u>Lopez v. Kempthorne</u>, 684 F. Supp. 2d 827, 885 (S.D. Tex. Jan. 14, 2010) ("denial of telecommuting agreement, denial of use of an entrance door, close monitoring by her supervisor, changes in her drafts of engagement letters, delayed award, assignment to a small office, denial of a larger and better located office, and denial of work requests" are not adverse employment actions); <u>id.</u> at 886 (supervisor's demeaning remarks to plaintiff, which were unrelated to any of plaintiff's protected classes, were not adverse employment actions).

A lower than expected performance "review itself, standing alone, plainly does not meet the ultimate-employment-decision test." <u>Mitchell</u>, 326 F. App'x at 855. Jones suffered no demotion or loss of pay after the February 15, 2012 evaluation. The review gave him notice and an opportunity to improve before any ultimate employment action would occur, which would only happen if he received another "below expectations" evaluation. When, as here, plaintiff has produced no evidence connecting his negative

performance evaluation to his compensation or another ultimate employment decision, he "has not shown an adverse employment action." Id. (citing Pegram 361 F.3d at 283). As explained previously, plaintiff's demotion from Superintendent I to Road Maintenance Foreman on January 29, 2013, after he received a second negative performance review dated October 22, 2012, is not included within his claims of alleged discriminatory events that are before this court. On August 20, 2013, almost one year after he filed the instant action, Jones filed another EEOC charge based on these events that is not a subject of this lawsuit.

Because he has not shown any adverse employment action, as defined by the Fifth Circuit, Jones has not met his burden to establish the third prong of a prima facie case of color-based discrimination. Accordingly, Jefferson Parish is entitled to summary judgment in its favor as a matter of law on this claim.

G.   Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, Jones must prove that defendant's conduct was extreme and outrageous, that his emotional distress was severe and that defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from its conduct. Iturralde v. Shaw Group, Inc., 512 F. App'x 430, 435 (5th Cir. 2013) (citing White v. Monsanto Co., 585 So. 2d 1205 (La. 1991)); accord LaBove v. Raftery, 802 So. 2d 566, 577-78 (La. 2001).

46

To rise to the tortious level, defendant's conduct must be

> so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.

White, 585 So. 2d at 1209; accord Iturralde, 512 F. App'x at 435; LaBove, 802 So. 2d at 577-78.

"Conduct which is merely [tortious] or illegal does not rise to the level of being extreme and outrageous." Nicholas v. Allstate Ins. Co., 765 So. 2d 1017, 1025 (La. 2000). Louisiana Civil Code article 2315, from which the cause of action for intentional infliction of emotional distress arises, "does not create liability for employment discrimination." Iturralde, 512 F. App'x at 435 (citing Hornsby v. Enter. Transp. Co., 987 F. Supp. 512, 515 (M.D. La. 1997)) (emphasis added).

"Employment disputes must have some quality that places them beyond the ordinary in order to qualify for intentional infliction of emotional distress." Charles v. JetBlue Airways Corp., No. 08-40, 2009 WL 273206, at *12 (E.D. La. Jan. 26, 2009) (citing Dean v. Ford Motor Credit Co., 885 F.2d 300 (5th Cir. 1989)). "Courts 'have consistently limited causes of action for [intentional infliction of emotional distress] in the workplace to cases which involve a pattern of deliberate, repeated harassment over a period of time.'" Iturralde, 512 F. App'x at 435 (quoting Nicholas, 765 So. 2d at 1026)

47

(internal quotation omitted); accord Ware v. CLECO Power LLC, 90 F. App'x 705, 708 (5th Cir. 2004). "Mere violation of laws regulating conduct in the workplace is not enough to establish intentional infliction." Skidmore v. Precision Printing & Pkg., Inc., 188 F.3d 606, 613 (5th Cir. 1999) (under Texas law, which is identical to Louisiana law).

Thus, actionable cases of intentional infliction of emotional distress arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress." Nicholas, 765 So. 2d at 1026. Mere "disciplinary action and conflict in a . . . workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily" extreme or outrageous. White, 585 So.2d at 1210.

Because Jones has not produced evidence sufficient to raise a material fact issue as to even a prima facie case of harassment, discrimination or retaliation, defendant's employment actions do not rise to the level of extreme and outrageous conduct, over a sufficient period of time, to constitute a tort under Louisiana law. Iturralde, 512 F. App'x at 435. Accordingly, defendant is entitled to summary judgment in its favor as a matter of law on this claim.

## CONCLUSION

Accordingly, IT IS ORDERED that defendant's motion to for summary judgment is GRANTED and plaintiff's claims of color discrimination, harassment, retaliation and

intentional infliction of emotional distress are DISMISSED WITH PREJUDICE, plaintiff

to bear all costs of these proceedings.  Judgment will be entered separately.

New Orleans, Louisiana, this _____18th_____ day of November, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

49